UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WENDY G. MCCARTER,

      Plaintiff,

v.                                       Case No:  6:12-cv-1150-Orl-31TBS

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

_____

## REPORT AND RECOMMENDATION[1]

     The Plaintiff brings this action pursuant to the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Act.

     I have reviewed the record, including the administrative law judge's ("ALJ") decision, the exhibits, the administrative record, the transcript of the hearing, and the pleadings and memoranda submitted by the parties.  For the reasons that follow, I respectfully recommend that the Commissioner's final decision in this case be **affirmed**, pursuant to sentence four of 42 U.S.C. § 405(g).

    I.  **Background**

      A.  Procedural History

_____

[1] Specific written objections to this report and recommendation may be filed in accordance with 28 U.S.C. § 636, and M.D. FLA. R. 6.02, within fourteen (14) days after service of this report and recommendation.  Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

Plaintiff filed for DIB and SSI benefits on August 4, 2008.  (Tr. 14).  She alleges disability beginning on April 16, 2008 due to menopause, hemorrhaging, anemia, emphysema, chronic fatigue, Reflex Sympathetic Dystrophy Syndrome (RSD), fibroids, Hepatitis C, and high blood pressure.  (Tr. 196).  She was 51 years old on her alleged disability onset date. She earned a General Equivalency Diploma (GED) and reported past work as a cook, housekeeper.  (Doc. 16 at 2, Tr. 196-97).  Her application was denied initially and on reconsideration.  (Tr. 14).  On May 26, 2011, at Plaintiff's request, a hearing was held before the ALJ who issued a decision on June 15, 2011, finding she was not disabled.  (Tr. 14-21, 27-57).  On June 12, 2012, the Appeals Council denied Plaintiff's timely request for review.  (Tr. 1-6).  She has exhausted her administrative remedies and this case is now ripe for consideration under 42 U.S.C. § 405(g).

B. Relevant Medical Records

A June 1, 2004 MRI revealed a mass in Plaintiff's right kidney. (Tr. 344). On June 22, 2004, a CT scan revealed irregularity, decreased enhancement and possible malignancy in the kidney. (Tr. 345). A July 21, 2004 ultrasound revealed a cyst in her right kidney. (Tr. 342).

On April 2, 2007, Plaintiff was hospitalized for four days and diagnosed with chronic airway obstruction, hypertension, hepatitis C, undiagnosed heart murmur, excessive/frequent menstruation, iron deficiency anemia, and tobacco use disorder. (Tr. 298, 303-304, 311). She complained of worsening shortness of breath and fatigue. (Tr. 299, 302, 305). A bone density scan revealed that "her left hip is significantly osteopenic[2]

---

[2] Osteopenia is: "A significant decrease in the amount of bone mineral density (BMD) normally found in a population or group." Taber's Cyclopedic Medical Dictionary, 21st Edition, 2009, at:www.tabers.com/tabersonline/ub/view/Tabers/143727/28/osteopenia

bordering on osteoporosis." (Tr. 335). Chest x-rays revealed mild hyperinflation of the lungs and mild emphysema. (Tr. 336-337).

In 2008, James G. Hull, D.O., diagnosed mild anxiety, anxiety syndrome, hypertension, osteoarthritis, chronic fatigue syndrome, hepatitis C, lymphadenitis, menorrhagia[3] and fibroid uterus, fibromyalgia,[4] and polyarthralgias.[5] (Tr. 328-331).  His associate Dr. Bonner diagnosed chronic lumbalgia, fibromyalgia and arthritis.[6] (Tr. 332).

On May 24, 2008, Plaintiff was diagnosed with anemia and prescribed medication that causes drowsiness or dizziness in some patients. (Tr. 362).

On October 21, 2008, Malcom J. Graham, III, Ph.D., evaluated Plaintiff and diagnosed alcohol abuse and marijuana abuse bordering on dependence in short term remission, personality disorder with dependent and narcissistic features, multiple physical complaints by report, vocational and legal problems, and a Global Assessment of Functioning of 65-75. (Tr. 370).

On October 27, 2008, David W. Carpenter, M.D., evaluated Plaintiff and diagnosed hepatitis C, peripheral neuropathy,[7] and mild chronic obstructive pulmonary disease. (Tr. 374).

---

[3] "Excessive menstrual bleeding or menstrual bleeding that lasts longer than seven days." Id. at: http://www.tabers.com/tabersonline/ub/view/Tabers/143617/20/menorrhagia.

[4] "Chronic and frequently difficult to manage pain in muscles and soft tissues surrounding joints." Id. at:http://www.tabers.com/tabersonline/ub/view/Tabers/143364/7/fibromyalgia.

[5] Polyarthralgia means many joint pains. Id. at: www.tabers.com/tabersonline/ub/view/Tabers/143083/24/arthralgia and www.tabers.com/tabersonline/ub/view/Tabers/143819/11/poly_.

[6] "Joint inflammation, often accompanied by pain, swelling, stiffness, and deformity." Id. at:www.tabers.com/tabersonline/ub/view/Tabers/143083/29/arthritis.

[7] Neuropathy is "Any disease of the nerves." Id. at:http://www.tabers.com/tabersonline/ub/view/Tabers/143683/30/neuropathy.

On October 28, 2008, Plaintiff was hospitalized for four days and diagnosed with, anemia, chronic viral hepatitis C, emphysema, arthropathy, and disorder of menstruation. (Tr. 404, 406). A total abdominal hysterectomy was performed. (Tr. 411).

On October 30, 2008, a non-examining, non-medical State consultant opined that Plaintiff could do activities of light work; occasionally climb, balance, stoop, kneel, crouch and crawl, but never climb ladders, ropes or scaffolds; and should avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation. (Tr. 363, 380-81).  Another nonexamining State consultant opined that she had mild limitations in daily living, social functioning, and maintaining concentration, persistence or pace. (Tr. 397).

In 2008 and 2009, Plaintiff was diagnosed at Halifax Medical Center with osteoporosis, nerve damage, peripheral neuropathy, insomnia, hypertension, hepatitis C, and anxiety/depression. (Tr. 569-571, 581, 591, 598-599, 616).  .

On March 9, 2009, a non-examining State consultant opined that Plaintiff had mild limitations in maintaining concentration, persistence or pace, but no limitations in daily activities and social functioning. (Tr. 487).

On March 27, 2009, Dr. Brown opined:

> Wendy McCarter is unable to work due to current medical
> conditions. She is being treated for Chronic Fatigue Syndrome,
> Hepatitis C, and nerve damage that affects her left leg. Please
> call if there are any further questions. Thank you.

(Tr. 494).

On May 6, 2009, x-rays revealed "mild to moderate spondylosis of the thoracic spine." (Tr. 497). On May 11, 2009, a pulmonary function report noted that Plaintiff was cooperative, and expended the maximal effort, and she was diagnosed with "moderate" pulmonary restriction. (Tr. 498-99, 501).

On October 29, 2009, a non-examining State consultant opined that Plaintiff could do activities of medium work. (Tr. 504).

On February 16, 2010, an ultrasound revealed a cyst in the right kidney. (Tr. 568). On March 16, 2010, a biopsy diagnosed Hepatitis C. (Tr. 541, 544). In 2010, Dr. Shobassy diagnosed chronic autoimmune hepatitis C, and noted that Plaintiff was interested in treatment. (Tr. 517, 519, 522, 524).

On April 14, 2011, Dr. Brown stated:

> Wendy McCarter is unable to work due to current medical conditions. She is being treated for Chronic Fatigue Syndrome, Hepatitis C, and nerve damage that affects her left leg. Please call if there are any further questions. Thank you.

(Tr. 619).

## II. The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the five-step sequential evaluation process established by the Commissioner and set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).  Specifically, the ALJ must determine whether the claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy.  See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Phillips, 357 F.3d at 1241 n.10.

The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since her April 16, 2008 alleged onset date.  (Tr. 16).  Plaintiff alleged the following severe impairments: hypertension, chronic fatigue syndrome, personality disorder, and a

history of polysubstance abuse.  (Id.).  However, at step two, the ALJ decided that Plaintiff

did not have a severe impairment or combination of impairments that met or medically

equaled a listed impairment.  (Tr. 20).  Accordingly, the ALJ held that Plaintiff had not been

under a disability within the meaning of the Act from her April 16, 2008 alleged onset date

through June 15, 2011, the date of the ALJ's decision.  (Tr. 20-21).

### III. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied

the correct legal standards and whether the findings are supported by substantial

evidence.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). The

Commissioner's findings of fact are conclusive if supported by substantial evidence. 42

U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a

preponderance.  It is such relevant evidence that a reasonable person would accept as

adequate to support a conclusion."  Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178

(11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence the district

court will affirm even if the reviewer would have reached a contrary result as finder of fact,

and even if the reviewer finds that the preponderance of the evidence is against the

Commissioner's decision. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  The

district court "may not decide facts anew, reweigh the evidence, or substitute our judgment

for that of the [Commissioner.]" Id.  "The district court must view the record as a whole,

taking into account evidence favorable as well as unfavorable to the decision." Foote, 67

F.3d 1533, 1560 (11th Cir. 1995) (per curiam); accord Lowery v. Sullivan, 979 F.2d 835,

837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the

reasonableness of the factual findings).

## IV. Discussion

### A.  Opinion of Treating and Examining Physicians Concerning Severe Impairments

In Winschel, the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. 631 F.3d at 1178-79 (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)); see Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987); see also McCloud v. Barnhart, 166 F. App'x 410, 418-19 (11th Cir. 2006) (The court found that the ALJ failed to explain the weight he gave a consulting physician's report and stated that while the ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion," the ALJ is, however, "required to state with particularity the weight he gives to different medical opinions and the reasons why."); Davis v. Barnhart, 186 F. App'x 965, 967 (11th Cir. 2006) ("The ALJ must state with particularity the weight given different medical opinions and the reasons for doing so, and the failure to do so is reversible error.").

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the sequential evaluation process. Absent good cause, the opinions of treating physicians must be accorded substantial or considerable weight.  Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988). Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory[8]

---

[8] Where a treating physician simply makes conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).

or inconsistent with the doctor's own medical records." <u>Phillips</u>, 357 F.3d at 1240-41 (citations omitted); <u>see also</u> <u>Edwards v. Sullivan</u>, 937 F.2d 580, 583 (11th Cir.1991). Generally, the opinions of examining physicians are given more weight than non-examining, treating more than non-treating, and specialists on issues within their areas of expertise more weight than non-specialists.") (internal citations omitted).

> 1.   Nerve Damage

Plaintiff argues that the ALJ failed to "state what weight he gave to the *diagnoses* of nerve disease from Dr. Carpenter and Halifax Medical Center."  (Doc. 15 at 9) (emphasis added).  Plaintiff also argues that the ALJ improperly rejected Dr. Brown's opinion when the ALJ ignored the fact that Dr. Carpenter had diagnosed hypersensitivity, decreased sensitivity, and peripheral neropathy nerve disease.  (<u>Id.</u> at 9-10).  Plaintiff argues that, consequently, the ALJ's finding that Plaintiff had no severe impairments was not supported by substantial evidence.  Plaintiff makes no further argument on this issue.

Plaintiff's argument is fatally flawed.  Simply listing diagnoses does not give the Court any insight into the severity of Plaintiff's limitations or her ability to perform substantial gainful activity. The ALJ is not concerned with a claimant's diagnosis; the relevant inquiry is the *degree* to which a claimant's condition limits her ability to engage in substantial gainful activity.  <u>See</u> <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("[T]he mere existence of  . . . impairments does not reveal the extent to which they limit [Plaintiff's] ability to work or undermine the ALJ's determination in that regard."); 20 C.F. R. § 404.1545(a) (The "residual functional capacity is the most you can still do despite your limitations."); <u>Ward v. Astrue</u>, No. 3:00-cv-1137-J-HTS, 2008 WL 1994978, at *3 (M.D. Fla. May 8, 2008) ("[A] 'mere diagnosis . . . says nothing about the severity of the condition . . . [D]isability determinations turn on the functional consequences, not the causes, of a

claimant's condition'") (internal citations omitted).  Accordingly, I respectfully recommend that the district court reject Plaintiff's argument and affirm the Commissioner's decision in this regard.

2.  Fibromyalgia

Again, Plaintiff argues that the ALJ failed to state what weight he gave to the *diagnoses* of fibromyalgia from Dr. Bonner, Dr. Hull, and Dr. Brown.  (Doc. 15 at 10-11).  Plaintiff notes that "[t]he Eleventh Circuit has stated that, 'a treating physician's determination that a patient is disabled due to fibromyalgia is even more valuable because there are no objective signs of severity and the physician must interpret the data for the reader.'" (Id.) (citing Stewart v. Apfel, No. 99-6132, 2000 U.S. App. LEXIS 33214, at *9 (11th Cir. Dec. 20, 2000)).

Plaintiff concedes that the ALJ addressed the sufficiency of the evidence concerning the fibromyalgia diagnosis and concluded that "[t]here were no trigger points given for fibromyalgia to establish it, and no other process have been ruled out."  (Doc. 15 at 11).  But, Plaintiff dismisses the ALJ's reasoning, arguing that it is "insufficient" and "not based on the application of the correct legal standard" because "[t]hree treating doctors agreed that [Plaintiff] had fibromyalgia, and one of them gave an opinion of disability based on this impairment."  (Id. at 11-12).  Lastly, Plaintiff asserts that if the ALJ could not determine from the record whether any or all of these doctors performed a pressure point test, he had the duty to develop the record.  (Id. at 12).

Again, Plaintiff's argument is fatally flawed.  The number of physicians who diagnose a condition is not dispositive.  Plaintiff acknowledges that the ALJ considered whether there were any "trigger points given for fibromyalgia to establish it" or "other process[es that] have been ruled out."  This phraseology does not come out of the thin air.  The ALJ was making clear that he considered Plaintiff's case within the context of Social

Security Ruling 12-2p.  SSR 12-2p requires a claimant to substantiate her fibromyalgia claim by showing a (a) history of widespread pain, (b) at least 11 positive tender points on physical examination or repeated manifestations of at least six symptoms, including fatigue, cognitive or memory problems, walking unrefreshed, depression, anxiety disorder or irritable bowel syndrome, AND (c) evidence that other disorders that could cause the symptoms or signs were excluded.  2012 WL 3104869, at *3.

In the Eleventh Circuit the ALJ has a basic duty to develop a full record.  Graham v. Apfel, 129 F.3d 1420, 1422-23 (11th Cir. 1997); Todd v. Heckler, 736 F.2d 641, 642 (11th Cir. 1984).  However, that duty does not absolve Plaintiff from proving her case. See Hamby v. Comm'r of Soc. Sec. Admin., No. 11-11455, 2012 WL 2547174, at *2 (11th Cir. July 3, 2012); see also Fletcher v. Astrue, No. 3:11-cv-665-J-JRK, 2012 WL 4356258, at *4 (M.D. Fla. Sept. 24, 2012); Rosenthal v. Barnhart, No. 03 C 6511, 2004 U.S. Dist. LEXIS 14671, at *24-25 (N.D. Ill. July 27, 2004) ("The ALJ [is] not required to engage in extensive investigations in a matter because of the absence of any competent evidence in the claimant's favor.").

Plaintiff has not pointed to any record evidence that would satisfy the evidentiary requirements of SSR 12-2P and it is not the Court's responsibility to argue her case for her or make loose associations in her favor based on speculation.   Accordingly, I respectfully recommend that the district court reject Plaintiff's argument and affirm the Commissioner's decision in this regard.

3.  Dr. Brown's Opinion

Plaintiff argues that the ALJ improperly rejected Dr. Brown's opinions without establishing the requisite good cause.  (Doc. 15 at 13).  It does not matter whether this Court agrees with the ALJ.  The Court's only task is to determine whether his ultimate decision is supported by substantial record evidence.

It is well settled that absent good cause, the opinions of treating physicians must be accorded substantial or considerable weight.  Lamb, 847 F.2d at 703. Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips, 357 F.3d at 1240-41; see also Edwards, 937 F.2d at 583.

Plaintiff points to two conclusory statements offered by Dr. Brown and argues that the ALJ should have afforded Dr. Brown's opinions great weight because other physicians' diagnoses support the conclusory statements. (Doc. 15 at 13).   Again, simply listing diagnoses does not give the Court any insight into the severity of Plaintiff's limitations or her ability to perform substantial gainful activity. The ALJ is not concerned with a claimant's diagnosis; the relevant inquiry is the *degree* to which a claimant's condition limits her ability to engage in substantial gainful activity.  See Moore, 405 F.3d at 1213 n.6; 20 C.F. R. § 404.1545(a); Ward, 2008 WL 1994978, at *3.  Accordingly, I respectfully recommend that the district court reject Plaintiff's argument and affirm the Commissioner's decision in this regard.

### B.  Side Effects of Plaintiff's Medication

Plaintiff argues that the ALJ erred by failing to consider the possible side effects of her medications. (Doc. 15 at 19-20).  She noted that she "reported to the Social Security Administration that medications caused side effects of tiredness, grogginess, and constipation." (Id. at 19).  She argues that the combination of her medications "*could* produce side effects" and that "[t]he ALJ has a duty to elicit testimony and make findings regarding the effect of prescribed medications upon the ability to work."  (Id. at 19-20) (citing Cowart v. Schweiker, 662 F.2d 731, 737 (11th Cir. 1981)).

In <u>Cowart</u>, the Circuit Court ruled that the ALJ "failed in his duty to develop the record fully because he neither elicited testimony nor made any findings regarding the effect of [the claimant's] prescribed medications upon her ability to work." <u>Cowart</u>, 662 F.2d at 737.  The Court said, based on plaintiff's testimony that she was "kind of zonked most of the time," that it was "conceivable that the side effects of medication could render [her] disabled or at least contribute to a disability." <u>Id</u>.  Despite Plaintiff's assertions, the Circuit Court's analysis doesn't end there.  In <u>Vesy v. Astrue</u> the Court elaborated on its <u>Cowart</u> ruling, and explained:

> [T]he ALJ need not inquire into the side effects of a claimant's medications where the claimant was represented at the hearing, and did not assert that side effects from her medications contributed to her disability.

No. 09-11240, 2009 WL 3818751, at *4 (11th Cir. Nov. 11, 2009).

Here, the record evidence shows that Plaintiff was represented at the hearing by attorney Richard Schwartz.  (Tr. 27, 29).  At the hearing, in response to the ALJ's question regarding whether her medications gave her side effects, Plaintiff responded that she "think[s] some of them make [her] tired."  (Tr. 46).  The only other evidence Plaintiff points to is a list of medications she provided to the Commissioner as part of her application for disability benefits.  <u>See</u> (Tr. 263).

The Court will not go so far as to interpret Plaintiff's response to the ALJ's inquiry as an assertion that side effects from her medications contributed to her disability.  The ALJ's general duty to develop the record does not absolve Plaintiff from proving her case or thrust upon the ALJ a responsibility to consider arguments Plaintiff fails to make.  <u>See</u> <u>Hamby</u>, 2012 WL 2547174, at *2; <u>Fletcher</u>, 2012 WL 4356258, at *4; <u>Rosenthal</u>, 2004 U.S. Dist. LEXIS 14671, at *24-25. Accordingly, I respectfully recommend that the district court reject Plaintiff's argument and affirm the Commissioner's decision in this regard.

## V. Recommendation

Upon consideration of the foregoing, I respectfully recommend that:

1.      The Commissioner's final decision in this case be **AFFIRMED**

2.      The Clerk be directed to enter judgment accordingly and **CLOSE** the file.

**RESPECTFULLY RECOMMENDED** in Orlando, Florida on August 27, 2013.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record